**FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

No. 24-11349

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*versus*

ABEL RIZO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:96-cr-00075-JIC-8

Before BRANCH, BRASHER, and HULL, Circuit Judges.

HULL, Circuit Judge:

In 1997, Abel Rizo was convicted of participating in a conspiracy to rob drug dealers at gunpoint, stealing large quantities of money and drugs. Rizo was sentenced to 468 months (39 years) of imprisonment, consisting of: (1) two concurrent 168-month

sentences for his drug convictions; (2) three concurrent 60-month sentences for his three Hobbs Act robbery convictions; (3) one consecutive 60-month sentence for his first 18 U.S.C. § 924(c) firearm conviction; and (4) a second consecutive, or stacked on top, 240-month sentence for his second § 924(c) firearm conviction.

In 2024, Rizo moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on a 2018 non-retroactive statutory amendment to § 924(c) that eliminated the 20-year stacking requirement for certain § 924(c) offenders. Rizo argued that this change in the law constituted an "extraordinary and compelling" reason for a reduction because, if he were sentenced today, he would receive only a consecutive 60-month (5-year) sentence for his second § 924(c) firearm conviction instead of a consecutive 240-month (20-year) sentence. Rizo relied on a 2023 Sentencing Commission policy statement, which provides that non-retroactive changes in the law can constitute an "extraordinary and compelling" reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6) (2023).

Over the government's objection, the district court granted Rizo's motion and reduced Rizo's consecutive sentence for his second § 924(c) conviction from 20 to 5 years. The government timely appealed.

After careful review, and with the benefit of oral argument, we conclude that (1) we have jurisdiction over the government's appeal, and (2) the district court erred in reducing Rizo's sentence in light of *Rutherford v. United States*, 608 U.S. 454 (2026) (holding

this same 2018 non-retroactive statutory amendment to § 924(c) could not, as a matter of law, constitute an "extraordinary and compelling" reason for a § 3582(c)(1)(A)(i) sentence reduction).

Our analysis proceeds in four parts. First, as legal background, we review the two statutes involved in this appeal: § 3582(c) and § 924(c), plus the Sentencing Commission's policy statement in § 1B1.13(b)(6). Next, we outline the factual and procedural history of Rizo's case.

Third, we address Rizo's claim that we lack jurisdiction and must dismiss the government's appeal of his reduced criminal sentence under § 3582(c)(1)(A)(i). We survey the relevant precedent and explain why we have jurisdiction over the government's appeal.

Lastly, reaching the merits, we conclude *Rutherford* requires reversal of the district court's sentence reduction.

## I. LEGAL BACKGROUND

### A. 18 U.S.C. § 3582(c)(1)(A)(i)—Sentence Reductions

As a general rule, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress, however, created certain limited exceptions to this general rule and allowed defendants to request a sentence reduction if they meet one of the exceptions. *See id.*

As is relevant here, one of the exceptions in § 3582(c) states that a district court "may" reduce a defendant's sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a)" if it finds

that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). This exception is referred to as "compassionate release." *See Rutherford*, 608 U.S. at 458.

Under this § 3582(c)(1)(A)(i) exception, a district court may grant a sentence reduction if (1) there is an "extraordinary and compelling" reason for a reduction, (2) the defendant is not a danger to the community (as provided in a policy statement), and (3) the § 3553(a) factors weigh in favor of a reduction. *See United States v. Giron*, 15 F.4th 1343, 1346 (11th Cir. 2021).

Congress did not define the phrase "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i). Instead, it directed the Sentencing Commission to define that phrase through policy statements. *See* 28 U.S.C. § 994(t). Congress instructed: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.*

Congress also required that the Commission's policy statements be "consistent with all pertinent provisions of any Federal statute." *Id.* § 994(a). Any policy statement defining "extraordinary and compelling reasons" thus must be consistent with the text of § 3582(c)(1)(A)(i). *Rutherford*, 608 U.S. at 472–73.

**B. U.S.S.G. § 1B1.13(b)(6)—Policy Statement**

This appeal involves the Commission's policy statement, promulgated in U.S.S.G. § 1B1.13(b)(6), which outlines when a change in sentencing law may be considered in determining whether a defendant presents an extraordinary and compelling reason for a sentence reduction. That policy statement addresses a change in the law that produces a gross sentencing disparity. Section 1B1.13(b)(6) reads:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (2023).

**C. 18 U.S.C. § 924(c)—2018 Amendment**

The change in the law at issue here is the 2018 statutory amendment to 18 U.S.C. § 924(c), a statute which criminalizes using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c).

At the time of Rizo's 1997 sentencing, the § 924(c) statute required that a defendant found guilty under § 924(c) be sentenced to a default mandatory-minimum consecutive sentence of 5 years. 18 U.S.C. § 924(c)(1) (1997). On top of that, § 924(c) added that "[i]n the case of his second or subsequent conviction under this subsection," a defendant found guilty must be sentenced to a mandatory-minimum consecutive sentence of 20 years stacked on top of the sentence for any other § 924(c) conviction. *Id.* The phrase "second or subsequent conviction" in § 924(c) applied to any § 924(c) conviction after the first, including where a first-time offender received multiple § 924(c) convictions within a single prosecution. *Deal v. United States*, 508 U.S. 129, 131–34 (1993), *abrogated by statute as stated in Hewitt v. United States*, 606 U.S. 419, 423–24 (2025).

Here, in 1997, Rizo, although a first-time offender, was convicted of two § 924(c) offenses in a single prosecution. This resulted in a 5-year mandatory-minimum consecutive sentence for his first § 924(c) conviction and a 20-year mandatory-minimum consecutive sentence for his second § 924(c) conviction.[1]

In 2018, however, Congress amended § 924(c)'s mandatory penalty scheme. The amended § 924(c) required a consecutive 25-year mandatory-minimum sentence for defendants who

---

[1] In 1998, Congress increased the 20-year mandatory minimum for "second or subsequent" § 924(c) convictions to 25 years. 18 U.S.C. § 924(c)(1)(C)(i) (1998). Because Rizo was sentenced in 1997, his sentence for his second § 924(c) conviction was 20 years.

violated § 924(c) and were previously convicted under § 924(c), but only when that "prior conviction under this subsection has become final." 18 U.S.C. § 924(c)(1)(C)(i) (2018). Pursuant to the 2018 amendment, a first-time offender, like Rizo, with two § 924(c) convictions in the same prosecution would not receive the enhanced mandatory minimum for his second § 924(c) conviction. *See Hewitt*, 606 U.S. at 424.

Congress made the 2018 amendment to § 924(c) (1) retroactive as to defendants not yet sentenced, and (2) non-retroactive as to those defendants, like Rizo, already sentenced. *See id.* at 424, 436–38. We now turn to Rizo's case.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Rizo's 1997 Conviction

In 1996, Rizo, along with fourteen codefendants, was charged in a superseding indictment with (1) one count of conspiracy to possess cocaine with intent to distribute from approximately 1987 to 1995, in violation of 21 U.S.C. §§ 846, 841(a)(1); (2) one count of possession of cocaine with intent to distribute on June 29, 1992, in violation of 21 U.S.C. § 841(a)(1); (3) one count of Hobbs Act robbery committed on June 29, 1992, in violation of 18 U.S.C. § 1951(a); (4) two counts of attempted Hobbs Act robbery committed on April 30, 1993, and November 24, 1993; (5) one count of using and carrying a firearm during and in relation to a crime of violence and a drug-trafficking crime on June 29, 1992, in violation of 18 U.S.C. § 924(c); and (6) a second count of violating § 924(c) on November 24, 1993.

During a multi-week jury trial, the government submitted evidence that Rizo participated with members of his family and others in a years-long conspiracy to rob drug dealers of their money and drugs. In Rizo's direct appeal, we described Rizo's and his co-conspirators' offense conduct. The overall scheme involved one individual gathering information about certain drug dealers, including by conducting controlled buys, while other co-conspirators conducted surveillance. *United States v. Gallego*, 247 F.3d 1191, 1195 (11th Cir. 2001). The co-conspirators used the gathered information to (1) identify the targeted drug dealer's stash house and (2) then, posing as police officers, rob the drug dealer at gun-point in the stash house. *Id.*

The jury found Rizo guilty of all seven charged offenses.

**B. Initial Sentence and Appeal**

On August 26, 1997, the district court sentenced Rizo to a total term of 468 months (39 years) of imprisonment, to be followed by 5 years of supervised release.

As recounted above, Rizo's 468-month sentence consisted of (1) two concurrent 168-month sentences for his two drug convictions; (2) three concurrent 60-month sentences for his three separate Hobbs Act robbery convictions; (3) one consecutive 60-month (5-year) sentence for his first § 924(c) conviction; and (4) a second consecutive 240-month (20-year) sentence for his second § 924(c) conviction.

Rizo appealed only his sentence, arguing that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in

sentencing him for his two drug convictions. *Gallego*, 247 F.3d at 1196–97. This Court affirmed. *Id.*

**C. Section 3582(c)(1)(A)(i) Motion for Sentence Reduction**

Over 20 years later, in 2023, Rizo filed a *pro se* motion to reduce his sentence under 18 U.S.C. § 3582(c). The district court denied that motion without prejudice because Rizo failed to exhaust his administrative remedies. After exhausting his administrative remedies, in 2024 Rizo filed another § 3582(c) motion that was identical to his first.

In his motion, Rizo argued that he was entitled to a sentence reduction under § 3582(c)(1)(A)(i) because of the 2018 amendment to § 924(c)'s mandatory sentencing scheme for "second or subsequent convictions." Rizo recognized that the 2018 amendment to § 924(c) did not apply retroactively to his 1997 sentence. Nevertheless, Rizo argued that (1) the 2018 amendment was an "extraordinary and compelling" reason for a sentence reduction under the policy statement in § 1B1.13(b)(6), and (2) he met all of the other criteria for a § 3582(c)(1)(A)(i) sentence reduction.

The government opposed Rizo's § 3582(c) motion. It argued that the 2018 non-retroactive amendment to § 924(c) did not constitute an "extraordinary and compelling" reason for a sentence reduction because (1) non-retroactive statutory changes in the law were not "extraordinary" or "compelling" under § 3582(c)(1)(A)(i), and (2) the policy statement in § 1B1.13(b)(6) was

contrary to the text, context, and purpose of § 3582(c)(1)(A)(i) and thus invalid.

**D. Order Granting Rizo's Sentence-Reduction Motion**

In 2024, the district court granted Rizo's § 3582(c)(1)(A)(i) motion.

The district court rejected the government's challenge to the validity of the policy statement in § 1B1.13(b)(6). The court found that (1) the phrase "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i) was ambiguous, and (2) the Commission's definition of that phrase in § 1B1.13(b)(6) to include non-retroactive statutory changes in the law was not invalid.

Next, the district court determined that Rizo satisfied all of § 1B1.13(b)(6)'s requirements for an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A)(i). The court found that (1) Rizo served over 10 years of imprisonment, (2) his 468-month sentence was "unusually long," and (3) the 2018 amendment to § 924(c) created a "gross disparity" between the 20-year consecutive sentence Rizo received for his second § 924(c) conviction in 1997 and the 5-year consecutive sentence he would receive if sentenced in 2024.

Finally, the district court concluded that Rizo satisfied the other requirements in § 3582(c)(1)(A)(i), including that (1) he was no longer a danger to the community, and (2) the § 3553(a) factors counseled in favor of reducing his sentence for his second § 924(c) conviction.

The district court reduced Rizo's consecutive sentence for his second § 924(c) conviction from 20 years to 5 years. Rizo's new 2024 sentence was a total of 288 months (24 years) of imprisonment. This resulted in Rizo's release from federal custody on December 6, 2024, according to the website run by the Bureau of Prisons.

The government appealed. Upon motion, we appointed counsel to represent Rizo.[2]

## III. STANDARDS OF REVIEW

"We review our appellate jurisdiction *de novo*." *United States v. Solomon*, 136 F.4th 1310, 1316 (11th Cir. 2025), *cert. denied*, 2026 WL 79892 (Jan. 12, 2026). "We review *de novo* whether a defendant is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Giron*, 15 F.4th at 1345. If a defendant is eligible for a § 3582(c) sentence reduction, we review the district court's decision to grant or deny a reduction for an abuse of discretion. *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1238 (11th Cir. 2017).

---

[2] On October 31, 2024, this Court issued a jurisdictional question to the parties. After receiving responses from counsel for the parties, this Court carried the jurisdictional issue with the case. Merits briefing was then completed on May 9, 2025. On June 17, 2025, the government moved to stay the appeal in light of the then-pending Supreme Court case *Rutherford v. United States*, which was not decided until May 28, 2026. On September 30, 2026, we held oral argument.

## IV. APPELLATE JURISDICTION

We have a duty to assure ourselves that we have appellate jurisdiction over the government's appeal. *See Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019).

We have never explicitly addressed whether we have appellate jurisdiction in a criminal case to hear a government appeal from a § 3582(c)(1)(A)(i) sentence reduction.[3] *See United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003) (explaining that § 3582(c) "is criminal in nature and therefore covered by rules applying to criminal cases, not civil cases"). To answer that question, we review (1) the finality rule in 28 U.S.C. § 1291; (2) Supreme Court and our precedent about § 1291 in government criminal appeals; (3) 18 U.S.C. § 3742, entitled "Review of a sentence"; and (4) our precedent about § 3742(b). Then, we explicate the parties' arguments and why we have jurisdiction.

### A. 28 U.S.C. § 1291

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The § 1291 statute provides that: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district

[3] Our decisions in government appeals from § 3582(c) rulings do not mention jurisdiction. *See, e.g.*, *United States v. Melvin*, 556 F.3d 1190, 1190–94 (11th Cir. 2009) (government appeal with no mention of jurisdiction). Jurisdictional holdings made *sub silentio* do not constitute authoritative precedent. *See Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1231 (11th Cir. 2007).

courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291.

As a general matter, a final decision for purposes of § 1291 is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Dunn v. Comm'r, Ala. Dep't of Corr.*, 179 F.4th 1277, 1298 (11th Cir. 2026) (quotation marks omitted). This Court applies the finality rule "with 'utmost strictness in criminal cases.'" *United States v. Shalhoub*, 855 F.3d 1255, 1260 (11th Cir. 2017) (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)). The final judgment in a criminal case is the sentence. *United States v. Curry*, 760 F.2d 1079, 1079 (11th Cir. 1985).

Despite § 1291's plain statement that the courts of appeals have jurisdiction from "all final decisions of the district courts," the Supreme Court has imposed restrictions on government appeals in criminal cases brought under § 1291, as explained below.

**B. Supreme Court: Restrictions on Government Criminal Appeals**

Over the years, the Supreme Court has read § 1291 in conjunction with the common law. Specifically, the Supreme Court has held that <u>§ 1291 alone</u> does not permit government criminal appeals unless (1) the government has an additional express statutory authorization to appeal under federal law, or (2) the order being appealed from under § 1291 possesses sufficient independence from the main course of the prosecution to warrant treatment as a plenary order. *See Arizona v. Manypenny*, 451 U.S.

232, 246–47 (1981) ("[T]he Federal Government enjoys no inherent right to appeal a criminal judgment, and . . . the grant of general appellate jurisdiction, now contained in 28 U.S.C. § 1291, does not authorize such a federal appeal.");[4] *Carroll v. United States*, 354 U.S. 394, 400–03 (1957) (explaining that the government may not appeal in a criminal case based on § 1291 alone unless the order being appealed possesses "sufficient independence from the main course of the prosecution to warrant treatment as [a] plenary order[]"); *see also United States v. Sanges*, 144 U.S. 310, 323 (1892).

The Supreme Court imposed these restrictions based in part on the federal common-law presumption that the government is not allowed to appeal in a criminal case. *See Manypenny*, 451 U.S. at 245–46 (describing common-law "presumption that the prosecution lacks appellate authority absent express legislative authorization to the contrary"); *Sanges*, 144 U.S. at 311–19 (describing the history of the common-law rule that the government cannot appeal in a criminal case without express statutory authorization).

[4] Although *Manypenny* concerned an appeal by a state government of a criminal case tried in federal court, it discussed at length the background of the federal rule that the United States government may not appeal in a federal criminal case without express statutory authorization from Congress. *See* 451 U.S. at 244–47.

### C. 18 U.S.C. § 3742(b): Broadens Government Criminal Appeals

In 1984, however, the appellate landscape for government appeals of sentences broadened when Congress enacted 18 U.S.C. § 3742. Section 3742(b) expressly authorized the government to appeal a defendant's final criminal sentence in explicit circumstances. *See* 18 U.S.C. § 3742(b). Section 3742(b) provides: "The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence" (1) "was imposed in violation of law;" (2) "was imposed as a result of an incorrect application of the sentencing guidelines;" (3) "is less than the sentence specified in the applicable guideline range;" or (4) "was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." *Id.*

### D. Our Circuit Precedent: Government Criminal Appeals

Our precedent for government criminal appeals is a bit at odds but seemingly reconcilable as § 1291 cases decided before and after the effective date of 18 U.S.C. § 3742(b).

Before the enactment of § 3742(b), this Court had dismissed government appeals of defendants' criminal sentences because (1) the government lacked express statutory authorization of Congress and (2) the *Carroll* exception did not apply. *See United States v. Denson*, 588 F.2d 1112, 1125–27 (5th Cir.) (dismissing government appeal of defendants' final sentences because (1) there was "no statutory authority permitting the Government to appeal" the defendants' sentences, and (2) the "*Carroll* doctrine" did not

apply since the defendants' sentences were not "severable from, and collateral to, the main case"),[5] *aff'd in part and rev'd in part on reh'g en banc*, 603 F.2d 1143 (5th Cir. 1979) (en banc);[6] *United States v. Dean*, 752 F.2d 535, 539–40 (11th Cir. 1985) (rejecting the government's argument that it had appellate jurisdiction over the government's appeal of a Federal Rule of Criminal Procedure 35(a) sentence reduction under § 1291 alone because (1) the government did not have express statutory authority to appeal, and (2) the exception stated in *Carroll* did not apply).[7]

Yet after the enactment of § 3742, this Court held that it had jurisdiction over two government appeals of criminal sentences, albeit with somewhat diverging views about the jurisdictional roles of § 1291 and § 3742(b). *Compare United States v. Chotas*, 913 F.2d 897 (11th Cir. 1990), *with United States v. Chavarria-Herrara*, 15 F.3d 1033 (11th Cir. 1994).

First came *Chotas*, which involved the government's cross-appeal of a defendant's final original sentence. The *Chotas*

---

[5] To be complete, in *Denson* the Court also examined 18 U.S.C. § 3731, which outlines statutory bases for government appeals from certain court decisions in criminal cases. 588 F.2d at 1125–26. No party suggests we have jurisdiction here under § 3731.

[6] All decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] *Dean*, decided in 1985, did not apply § 3742(b) because the underlying proceedings occurred before the statute's effective date. *See Dean*, 752 F.2d at 537 n.*.

Court summarily concluded that "our jurisdiction to review the sentence imposed by the district court derives from 28 U.S.C. § 1291." 913 F.2d at 898. *Chotas* did not cite *Denson* and *Dean* or mention that those cases had ruled that § 1291 alone does not provide jurisdiction for a government appeal of a defendant's criminal sentence unless (1) the government has express statutory authorization to appeal or (2) the *Carroll* independent-order exception applies. *Compare id.*, *with Denson*, 588 F.2d at 1125–27, *and Dean*, 752 F.2d at 539–40.

The *Chotas* Court did cite in passing § 3742(b), but not as the statutory authorization required to appeal under § 1291. *See Chotas*, 913 F.2d at 898–99. Rather, the *Chotas* Court cited § 3742(b) as not affecting its appellate jurisdiction under § 1291. *See id.* The *Chotas* Court said that § 3742 did "not alter this [§ 1291] proposition" because § 3742 merely "defines the claims that the court of appeals may hear in reviewing an appeal." *Id.* (quoting *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir. 1989)).[8]

In contrast, in *Chavarria-Herrara*, this Court expressly held that § 3742(b) "confers appellate jurisdiction" to hear the government's appeal of a defendant's sentence reduction for substantial assistance under Federal Rule of Criminal Procedure 35(b). 15 F.3d at 1034–36. This Court noted that it had previously

[8] The *Chotas* Court cited to *Fossett*, but that case involved a defendant's direct appeal of a final sentence, not a government appeal. *See Fossett*, 881 F.2d at 978–79. The *Fossett* Court properly had jurisdiction over a defendant's appeal from his sentence under § 1291 alone. *See id.*

held that § 3742 "confers jurisdiction" on this Court over a defendant appeal from a Rule 35(b) ruling. *Id.* at 1035 (citing *United States v. Yesil*, 991 F.2d 1527, 1531 & n.4 (11th Cir. 1992)). This Court reasoned that § 3742(b) must therefore also control its appellate jurisdiction over government appeals from Rule 35(b) orders because of the "symmetrical structure of § 3742," which indicated that "Congress intended appellate review of sentences to be available to the government on the same terms as to defendants." *Id.* This Court thus held that "§ 3742(b) allows the government to appeal a Rule 35(b) determination and confers appellate jurisdiction on this court, when that determination results in a sentence that satisfies one of the criteria for appeal set out in § 3742." *Id.*

The *Chavarria-Herrara* Court also (1) pointed out that § 3742 allows for the appeal of an "otherwise final sentence," *id.* at 1035 (quoting 18 U.S.C. § 3742(b)), and (2) determined that the words "sentence" and "imposed" in § 3742(b) extended both to the original imposition of sentence and a sentence modification, *id.* at 1035–36. This Court reasoned that "[t]he sentence that is ordered by a sentencing court in ruling on a Rule 35 motion readily falls within the meaning of the concept of imposition of sentence." *Id.* at 1036 (citing *Dean* and adopting its determination that "a modification of a sentence is part of the sentencing process"). The Court concluded that the government may appeal a Rule 35 reduced sentence if it satisfies one of the four criteria in § 3742(b). *Id.* at 1035–36. The Court held the district court's reduced sentence to time served was based on factors other than substantial

assistance and so "violated the law." *Id.* at 1037. The Court vacated the reduced sentence and remanded for further proceedings. *Id.*

*Chavarria-Herrara* appears consistent with Supreme Court and our *Denson*/*Dean* precedent because it (1) rejected the government's contention that § 1291 alone could be the jurisdictional basis for a government appeal of a criminal sentence and (2) required the government to have an express statutory authorization to appeal, which was satisfied by § 3742(b). *See id.* at 1034–36. With our precedent covered, we return to this case.

**E. The Parties' Arguments**

The government argues that we have jurisdiction under 28 U.S.C. § 1291 alone. The government acknowledged, however, at oral argument that it also needs express statutory authorization to appeal, which it contends is provided by § 3742(b).

Rizo, on the other hand, asserts that (1) § 1291 alone cannot establish our jurisdiction given our binding precedent in *Denson* and *Dean*, (2) § 3742(b) is the only jurisdictional basis for the government's appeal given *Chavarria-Herrara*, and (3) in this case the government failed to satisfy the requirements in § 3742(b).

The government responds that (1) *Denson* and *Dean* are distinguishable from this case because they were decided in different procedural contexts, and (2) *Chavarria-Herrara*'s 1994 holding—that § 3742(b) "confers appellate jurisdiction"—is no longer good law because it has been effectively abrogated by the Supreme Court's intervening precedent analyzing when a statute is jurisdictional or merely presents a claim-processing rule.

*See, e.g.*, *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 547–50 (2019) (describing in a civil case the difference between jurisdictional requirements and claim-processing rules).

**F. Jurisdiction Analysis**

We need not decide whether (1) the government is correct that our appellate jurisdiction over a government appeal of a § 3582(c)(1)(A)(i) sentence reduction in a criminal case rests on § 1291 alone, and § 3742(b) provides merely statutory authorization for the government's appeal, or (2) Rizo is correct that our appellate jurisdiction derives from § 3742(b), not § 1291. That is because, under either approach, the analysis and outcome in this case are identical.

Under either approach, the government must satisfy two requirements. First, the ruling the government appeals must be final because both § 1291 and § 3742(b) require finality. *See* 28 U.S.C. § 1291 (stating courts of appeals have appellate jurisdiction over "all final decisions of the district courts"); 18 U.S.C. § 3742(b) (stating the government may appeal "an otherwise final sentence" if it satisfies certain criteria). Second, the government must satisfy one of the criteria listed in § 3742(b), either to establish that it has authorization to appeal or to establish our appellate jurisdiction. Both requirements are satisfied in this case, so we have appellate jurisdiction.

As to the first requirement, the district court's order reducing Rizo's sentence clearly satisfies the finality rule (in both § 1291 and § 3742(b)) because it left "nothing for the court to do

but execute the judgment." *Dunn*, 179 F.4th at 1298; *see also Shalhoub*, 855 F.3d at 1260; *Curry*, 760 F.2d at 1079. The sentence-reduction order was a post-judgment ruling that completely resolved the motion that initiated the post-judgment proceedings and is therefore final.

As to the second requirement, the government has satisfied one of the criteria listed in § 3742(b). The government has presented a cognizable claim that the district court's reduction of Rizo's sentence under § 3582(c)(1)(A)(i) was "in violation of law." *See* 18 U.S.C. § 3742(b)(1). On appeal, the government argues that the district court was not legally authorized to reduce Rizo's sentence because (1) the 2018 non-retroactive statutory amendment to § 924(c), as a matter of law, does not constitute an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A)(i), and (2) § 1B1.13(b)(6) is invalid to the extent it counsels otherwise. Those purely legal arguments clearly satisfy § 3742(b)(1)'s criterion of a sentence imposed "in violation of law." Indeed, a district court's decision regarding whether it is authorized to reduce a sentence under § 3582(c) is a question of law we review *de novo*. *See United States v. Melvin*, 556 F.3d 1190, 1191 (11th Cir. 2009); *Giron*, 15 F.4th at 1345–46.

In sum, regardless of whether our jurisdiction derives from § 3742(b) alone or from § 1291 with § 3742(b) merely providing the authorization to appeal, we have appellate jurisdiction because (1) the district court's order reducing Rizo's sentence is final under § 1291 and § 3742(b), and (2) the government has presented a

cognizable claim that the district court violated the law in reducing Rizo's sentence for purposes of § 3742(b)(1).

## V. RIZO'S SENTENCE REDUCTION

Having concluded appellate jurisdiction exists, we turn to the merits of whether Rizo's reduced sentence on his second § 924(c) conviction was "in violation of law." The merits issue is controlled by *Rutherford v. United States*, 608 U.S. 454 (2026).

### A. *Rutherford v. United States*

*Rutherford* arose from the cases of two defendants who, like Rizo, (1) were first-time offenders convicted of multiple violations of § 924(c) in a single prosecution and (2) received consecutive stacked mandatory-minimum sentences for their multiple § 924(c) convictions. 608 U.S. at 459. Also like Rizo, the two defendants moved to reduce their sentences under § 3582(c)(1)(A)(i), arguing that the 2018 non-retroactive statutory amendment to § 924(c)'s mandatory penalty scheme for "second or subsequent" convictions created a gross disparity and constituted an "extraordinary and compelling" reason for a reduction. *Id.* at 463–64. The defendants' motions were denied, and the Third Circuit affirmed the denials. *Id.*

Affirming too, the Supreme Court concluded that the 2018 non-retroactive statutory amendment to § 924(c) could not qualify, as a matter of law, as an "extraordinary and compelling" reason for a sentence reduction under § 3582(c)(1)(A)(i). *Id.* at 465–73. The Supreme Court stated: "When Congress declines to make a sentencing amendment retroactive, the fact that a preamendment

sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." *Id.* at 465 (citation modified).

The Supreme Court also reasoned that the 2018 amendment was neither "extraordinary" nor "compelling" because (1) the disparity between the defendants' earlier sentences and the sentences they would now receive under the amended § 924(c) was "an unexceptional feature of a system in which nonretroactivity is the default," and (2) Congress deliberately decided not to make the 2018 amendment retroactive for those already sentenced when the amendment went into effect. *Id.* at 465–66. The Supreme Court emphasized that the 2018 amendment fell "well outside the heartland of compassionate release, which has long been defined by a prisoner's personal circumstances." *Id.* at 466–67.

Further, the Supreme Court determined that the Sentencing Commission's policy statement in § 1B1.13(b)(6) did not change this conclusion. *Id.* at 472–73. The Supreme Court explained that, in defining "extraordinary and compelling reasons" pursuant to § 994(t), "the Commission's policy statement[] must be 'consistent with' the governing statute," 28 U.S.C. § 994(a), and the Commission "exceeds its statutory authority by adopting a definition of a term that is inconsistent with the statute." *Id.* (citation modified). Although not nailing down the boundaries of the phrase "extraordinary and compelling," the Supreme Court concluded the plain and unambiguous meaning of the statute made clear that Congress's non-retroactive change to § 924(c) cannot

make a defendant eligible for release under § 3582(c)(1)(A)(i). *Id.* at 473 (citing *Batterton v. Francis*, 432 U.S. 416, 426 (1977)). Because § 3582(c)(1)(A)(i) did not allow a sentence reduction for the 2018 amendment to § 924(c), the Court held that, "[t]o the extent that it counsels otherwise, [§ 1B1.13(b)(6)] is invalid." *Id.*

**B. Merits Analysis**

In light of *Rutherford*, we hold that the district court erred in concluding that Rizo was eligible for a sentence reduction under § 3582(c)(1)(A)(i) based on the 2018 non-retroactive statutory amendment to § 924(c) and the policy statement in § 1B1.13(b)(6). *Rutherford*, 608 U.S. at 465–73. The disparity between the consecutive 20-year sentence Rizo received for his second § 924(c) conviction in 1997 and the 5-year sentence he would have received for that conviction after the 2018 amendment does not constitute, as a matter of law, an "extraordinary and compelling" reason for a sentence reduction. *Id.* The district court thus erred in granting Rizo's § 3582(c)(1)(A)(i) motion.[9] *Id.*

## VI. CONCLUSION

We reverse the district court's order granting Rizo's § 3582(c)(1)(A)(i) motion and reducing Rizo's sentence on his second § 924(c) conviction. On remand, we direct the district court

---

[9] Rizo's motion also asserted that Amendments 782 and 599 to the Sentencing Guidelines entitled him to a § 3582(c)(2) sentence reduction. The district court did not address or rely on those amendments in reducing Rizo's sentence. In this appeal, no issue is raised as to Amendments 782 and 599.

to vacate Rizo's amended sentence entered on April 2, 2024, and reinstate Rizo's original sentence entered on August 25, 1997.

**REVERSED.**